# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re                                                Chapter 13
**ANNETTE M. HOLLAND,**                              Case No. 04-18099-JNF
     Debtor

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**ANNETTE M. HOLLAND,**
     Plaintiff,

v.                                                   Adv. P. No. 06-1418
**EMC MORTGAGE CORPORATION,**
     Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matters before the court are (1) the "Defendant EMC Mortgage Corporation's

Motion for Summary Judgment" (the "Motion for Summary Judgment") filed by

defendant, EMC Mortgage Corporation ("EMC") with respect to all claims set forth in the

First Amended Complaint filed by the Plaintiff, the Chapter 13 debtor, Annette M. Holland

(the "Debtor"), on August 23, 2007; and (2) the Debtor's "Objection to Motion for Summary

Judgment" (the "Objection"). Through the First Amended Complaint, the Debtor alleges

that EMC violated both the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601

*et seq.* ("RESPA") and the Massachusetts Consumer Protection Statute, Mass. Gen. Laws ch.

1

93A. In support of its Motion for Summary Judgment, EMC filed a Memorandum of Law, a Statement of Undisputed Facts pursuant to Local Rule 56.1 of the United States District Court for the District of Massachusetts, and the affidavits of Gregory Fedler, a Vice-President of EMC, James L. Rogal, the Managing Attorney of the law firm of Ablitt & Charlton, PC ("A&C") (the "Rogal Affidavit"), and Meredith A. Swisher, counsel for EMC (the "Swisher Affidavit"). EMC also attached to the Swisher Affidavit copies of the Debtor's Responses to Interrogatories, dated February 16, 2008, the Debtor's Initial Disclosures, dated December 6, 2007, as well as excerpts from the transcript of the Debtor's deposition conducted on February 20, 2008. On April 28, 2008, the Court denied the Debtor's request for an extension of time to file her own motion for summary judgment as such request was filed after the deadline imposed by the Court's scheduling order dated November 13, 2007. As a result, the Debtor did not file a cross motion for summary judgment, and she did not file any counter-affidavits in support of her Objection. The Debtor also did not file any objection to EMC's Statement of Undisputed Facts which the Court accepts as uncontested.

EMC's Motion for Summary Judgment pertains to two letters. The first letter, dated August 5, 2006 (the "August 5th Letter"), was sent by Debtor's counsel to A&C, as counsel to EMC. A&C acknowledged receipt of that letter but rejected service of it because, it claims, it was not authorized by its client to receive or respond to it. The second letter, dated September 6, 2006 (the "September 6th Letter"), was sent by Debtor's counsel directly to EMC. The Debtor characterizes both Letters as "qualified written requests" under §

2

2605(e) of RESPA. In its Motion for Summary Judgment, EMC argued that it never received either the August 5th or September 6th Letter from the Debtor and that, even if it had, the Debtor failed to establish any damages under either RESPA or Ch. 93A.

On June 26, 2008, this Court held a hearing on the Motion for Summary Judgment and the Objection. At the hearing, Debtor's counsel represented that he personally mailed the September 6th Letter to EMC but conceded that he did not have supporting evidence of that fact. As a result, counsel abandoned any claim against EMC based upon the September 6th Letter and agreed to rely only on the August 5th Letter. Tr. at p. 12 and 14. Also, at the hearing, the Court inquired whether A&C's failure to accept delivery of, or respond to, the August 5th Letter was proper, and whether A&C, as attorney for EMC in this bankruptcy case, was the appropriate recipient of the August 5th Letter. The Court ordered EMC to file a brief on those issues as well as the issue of whether A&C was required to forward the August 5th Letter to its client. Both parties filed supplemental briefs in response to the Court's order.

The facts necessary to decide this matter are not in dispute and the matters under advisement are now ripe for determination. The Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.[1]

## II. FACTS

---

[1] Although many of the facts concerning the claims of the Debtor against EMC in this adversary proceeding were set forth in the Court's prior decision in this case, Holland v. EMC Mortgage Corp. (In re Holland), 374 B.R. 409 (Bankr. D. Mass. 2007), a review of the relevant facts, as supplemented by subsequent events and pleadings, is warranted.

3

The Debtor is the owner of real property located at 90 Belnel Road, Mattapan, Massachusetts (the "Property"). On March 21, 1995, the Debtor granted a mortgage (the "Mortgage") on the Property in favor of Fleet Real Estate Funding Corp. to secure a loan in the principal amount of $70,000.00. On December 19, 2002, Washington Mutual Bank, FA, formerly known as Washington Mutual Home Loans, Inc., as successor to Fleet Mortgage Corporation, formerly known as Fleet Real Estate Funding Corp., assigned the Mortgage to EMC.

On October 4, 2004, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code, her sixth Chapter 13 case in twelve years. On October 25, 2004, EMC timely filed a secured proof of claim in the amount of $109,498.21, inclusive of a prepetition mortgage arrearage, together with an itemization of certain collection costs, fees, and advances (the "EMC Claim"). Three days later, on October 28, 2004, Attorney Robert F. Charlton of the law firm of A&C filed a notice of appearance in this case on behalf of EMC requesting service of "each notice of any proceeding, hearing and/or report in this matter, including, but not limited to notices required by Bankruptcy Rule 2002(g) and the Local Rules of Bankruptcy Procedure, upon the undersigned at the address indicated below." Pursuant to Massachusetts Local Bankruptcy Rules, Appendix 1, Rule 13-13(b), the deadline for the Debtor to object to the EMC Claim was March 10, 2005. The Debtor did not object to the EMC Claim and did not seek an extension of time within which to do so.

On August 10, 2005, AMC filed the first of two motions for relief from stay with respect to the Property. The Court denied that motion at a hearing on November 10, 2005.

4

In order to fund her proposed Chapter 13 plan, the Debtor intended to refinance her Property through a reverse mortgage, but the refinancing could not occur until she resolved a title defect which resulted from a satisfied but undischarged mortgage on the Property. To resolve the defect, the Debtor filed an adversary proceeding on February 25, 2006 against Resource One, Inc., f/k/a The Dartmouth Plan, Inc., seeking a discharge of a mortgage on the Property originally held by American Door & Window (the "Resource One Adversary Proceeding").

On August 5, 2006, while the Resource One Adversary Proceeding was pending, Debtor's counsel sent the August 5th Letter to EMC, c/o Robert Charlton, Esq. of A&C, the first sentence of which provided:

> Please treat this letter as a 'qualified written request' under the Federal Servicer Act, which is part of the Real Estate Settlement Procedures Act, 12 U.S.C. [sic]2605(e), and a demand pursuant to Massachusetts General Laws Chapter 93A.

The Debtor requested a current payoff amount for the EMC Mortgage, as well as information relating to charges and fees assessed against the Debtor as originally set forth by EMC in its first motion for relief from stay. The Debtor intended the August 5th Letter to be a qualified written request ("QWR") under 12 U.S.C. § 2605(e)(1) of RESPA. A&C acknowledged receipt of the August 5th Letter, however, it responded to Debtor's counsel that it was not authorized to accept service of or respond to a QWR on behalf of EMC. It further instructed Debtor's counsel to contact EMC directly. It does not appear that EMC established an exclusive address for the receipt of QWRs in this case.

Despite its receipt of the August 5th Letter, A&C did not forward a copy of it to

5

EMC. Following A&C's directive, the Debtor alleged that her counsel then sent the "virtually identical [September 6th] letter directly to EMC," which she copied on A&C. Both EMC and A&C denied receipt of the September 6th Letter.

On August 17, 2006, the Court entered defaults against all defendants in the Resource One Adversary Proceeding. On October 10, 2006, it entered judgments discharging the original mortgage of American Door &Window, thus resolving the title defect on the Property.

On November 21, 2006, the Debtor commenced this adversary proceeding against EMC by filing a Complaint (the "Original Complaint") containing five counts, including a count based upon a violation of RESPA for EMC's alleged failure to respond to a qualified written request from the Debtor. It is unclear from the Original Complaint whether the Debtor was relying upon the August 5th or September 6th Letter for the alleged RESPA violation.

On December 5, 2006, while this adversary proceeding was pending, and more than two years after the commencement of the Debtor's Chapter 13 case, the Debtor filed a Motion for Leave to Obtain Credit (the "Refinancing Motion") to obtain a reverse mortgage on the Property. In the Refinancing Motion, the Debtor explained the delay in seeking Court authority for the reverse mortgage:

> [The Debtor's] plan calls for her to refinance the obligation to EMC. Although she was approved several months ago for refinancing . . . , she has been delayed in completing the refinancing due to a cloud on the title to her home. This required the commencement of an Adversary Proceeding. That Adversary Proceeding has been concluded and the title issue has been resolved. Unfortunately, EMC has not responded to requests from [Debtor's] counsel for a payoff statement. Accordingly,

6

> [the Debtor] has commenced another Adversary Proceeding against EMC to obtain
> a declaration as to the amount necessary to pay off the obligation, and for damages
> relating to EMC's violation of various statutes and regulations . . . .

Refinancing Motion at ¶¶ 5 and 6. She attached an exhibit to the Motion which contained

various loan terms and provided for an estimated closing date of February 1, 2007.

The Court conducted a hearing on the Refinancing Motion on January 11, 2007. At

the hearing, Debtor's counsel represented that he had received a payoff letter from EMC

and that the Debtor disputed approximately $25,000 in EMC's fees and charges asserted

through its previously filed proof of claim.[2] The Court granted the Refinancing Motion on

January 12, 2007 and expressly directed that $25,000 of the closing proceeds be held in

escrow pending further order of the Court. The Court also ordered EMC to file an

itemization of attorneys' fees and costs in accordance with Fed. R. Bankr. P. 2016 to resolve

the fee dispute. Before EMC filed the itemization, the closing for the refinancing took place

on February 6, 2007 (the "Closing"), five days after the estimated closing date of February

1st. Debtor's counsel failed to attend the Closing and did not establish the required escrow.

As a result, the closing attorney disbursed the sum of $126,269.97 to EMC which included

the $25,000 in disputed fees and charges. *See* Holland, 374 B.R. at 422.

On March 9, 2007, EMC filed a Motion to Dismiss the Original Complaint in this

adversary proceeding which the Debtor opposed. By order dated August 2, 2007, this

Court approved all sums previously paid to EMC at the Closing and dismissed all counts

---

[2] The Mortgage contained a clause permitting the mortgagee to recoup collection
costs and fees in the event of a default. *See* Holland, 374 BR at 417.

in the Original Complaint except for Count I entitled "Count I - Violation of the Servicer Act," based upon RESPA. The Court expressly highlighted the Debtor's failure to sufficiently plead that count. It stated:

> Notably, the Debtor did not set forth a causal link between EMC's failure to respond to the Qualified Written Request and any actual damages, and she did not so much as intimate the extent of her actual damages, if any.

Holland, 374 B.R. at 443. Notwithstanding the deficiency, the Court afforded the Debtor an opportunity to amend Count I and to file an amended complaint by August 23, 2007.

The Debtor filed her Amended Complaint on August 23, 2007. It contained two counts: "Count I- Violation of the Servicer Act," based upon EMC's alleged violations of RESPA,[3] and "Count II- Chapter 93A."[4] Through Count II, the Debtor alleged a violation of the Massachusetts Consumer Protection Statute, based on EMC's alleged failure to comply with RESPA. The Debtor attached copies of the August 5th and September 6th Letters to the Amended Complaint.

The Debtor averred that EMC's failure to respond to the QWR caused a delay in her ability to complete the refinancing and resulted in the assessment of additional interest and other charges which were added to the loan balance collected by EMC at the Closing "which but for [EMC's] failure, she would not have incurred." Through her Ch. 93A Count, the Debtor sought actual damages, trebled, attorneys' fees and costs and statutory

---

[3] As discussed below, it is not entirely clear from the language of the Amended Complaint whether this Count is based upon EMC's failure to respond to the August 5th or September 6th Letter.

[4] See Mass. Gen. Laws ch. 93A §§ 1-11.

8

damages under RESPA. EMC answered the Amended Complaint, and the Court issued

a Pretrial Order on September 14, 2007, later amended on November 13, 2007 at the parties'

request, establishing deadlines for the completion of discovery and the filing of dispositive

motions. On February 20, 2008, EMC deposed the Debtor who testified that she had "no

idea" how much money she was seeking in this lawsuit.[5] *See* Ex. C to Swisher Affidavit.

## III. STATUTORY PROVISIONS

Section 2605(e) of RESPA provides:

> (e) Duty of loan servicer to respond to borrower inquiries
>
> (1) Notice of receipt of inquiry
>
> (A) In general
>
> If any *servicer* of a federally related mortgage loan
> receives a qualified written request from the borrower (or an
> agent of the borrower) for information relating to the servicing
> of such loan, the *servicer* shall provide a written response
> acknowledging receipt of the correspondence within 20 days
> (excluding legal public holidays, Saturdays, and Sundays) unless
> the action requested is taken within such period.
>
> (B) Qualified written request
>
> For purposes of this subsection, a qualified written request
> shall be a written correspondence, other than notice on a
> payment coupon or other payment medium supplied by the servicer,
> that–
>
>> (i) includes, or otherwise enables the servicer to
>> identify, the name and account of the borrower; and

---

[5] There is nothing in the record to indicate that the Debtor conducted any of her own discovery.

9

> (ii) includes a statement of the reasons for the belief
> of the borrower, to the extent applicable, that the account
> is in error or provides sufficient detail to the servicer
> regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(emphasis added).   Thereafter, and within 60 days of receiving a

QWR, the servicer shall make appropriate corrections in the account of the borrower,

conduct an investigation, and provide a written explanation to the borrower in accordance

with the statutory provisions.  *See* 12 U.S.C. § 2605(e)(2).

Section 2605(i)(2) and (3) defines "servicers" and "servicing" and provides:

> (2) Servicer
>
> The term "servicer" means the person responsible for servicing of a loan
> (including the person who makes or holds a loan if such person also services
> the loan). . .
>
> (3) Servicing
>
> The term "servicing" means receiving any scheduled periodic payments
> from a borrower pursuant to the terms of any loan, including amounts for
> escrow accounts described in section 2609 of this title, and making the
> payments of principal and interest and such other payments with respect to
> the amounts received from the borrower as may be required pursuant to the
> terms of the loan.

12 U.S.C. § 2605(i)(2) and (3).

Section 2605(f) provides for damages under RESPA:

> (f) Damages and costs
>
> Whoever fails to comply with any provision of this section shall be

10

liable to the borrower for each such failure in the following amounts:

(1) Individuals

In the case of any action by an individual, an amount equal to the sum of–

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000. . .

(3) Costs

In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

12 U.S.C. § 2605(f)(1) and (3).[6]

The Department of Housing and Urban Development promulgated 12 U.S.C. Regulation X, 24 C.F.R. § 3500, as a means to implement RESPA. Section 3500.21(e)(1) of 24 C.F.R., titled "Duty of loan servicer to respond to borrower inquires," addresses a mortgage servicer's obligation under 12 U.S.C. § 2605(e)(1)(A) to respond to a borrower's qualified written request. The last sentence of this paragraph of the regulation also provides:

By notice either included in the Notice of Transfer or separately delivered by first-class mail, postage prepaid, a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written

_____

[6] Section 2605(f)(2) relates to class actions and is not applicable here.

requests.

24 C.F.R. § 3500.21(e)(1).

Title 209 of the Massachusetts Code of Regulations § 18.21, entitled "Unfair Servicing Practices" provides:

> A third party loan servicer may not use unfair or unconscionable means in servicing any loan. Without limiting the general application of the foregoing, the following conduct is a violation of 209 CMR 18.21:
>
> . . . (4) Failing to provide loan payoff information within five business days of a receipt of a written request.

209 Mass. Code Regs. § 18.21(4).

## IV. POSITIONS OF THE PARTIES

### A. EMC

EMC's argument for summary judgment is twofold. First, it contends that summary judgment on Count I (RESPA) is appropriate because EMC did not receive a QWR from the Debtor as required by § 2605(e)(1)(A). EMC contends that the Debtor's delivery of the August 5th Letter to A&C does not constitute receipt by EMC as A&C is not a "servicer" as defined in § 2605(i)(2). To emphasize that point, EMC refers to a portion of the Court's decision in Holland in which the Court addressed the deficiencies in the Debtor's Original Complaint:

> [The Debtor] did not allege that Ablitt & Charlton were servicers within the meaning of RESPA. Additionally, she did not allege that they were agents of EMC for purposes of responding to qualified written requests, and she did not name the firm as a defendant.

Holland, 374 B.R. at 421, n.16. EMC notes that even after being given the opportunity to amend her complaint, the Debtor still failed to name A&C as a defendant or otherwise cure the infirmities of the Original Complaint highlighted by the Court. EMC supports its position with the Rogal Affidavit in which Rogal, as the managing partner of A&C, attested that the firm "is not a servicer or agent of EMC for purposes of responding to qualified written requests, and is not authorized by EMC to respond or accept any process on its behalf." Rogal Aff. at ¶5. That factual assertion was not rebutted by the Debtor through affidavit or otherwise.

Second, even assuming the Debtor alleged a valid RESPA claim, EMC observes that the Debtor failed to produce any evidence of actual or statutory damages under RESPA which are causally related to EMC's failure to respond to the August 5th Letter. Accordingly, EMC says it is entitled to summary judgment on both Count I and Count II (Ch. 93A) which is based upon the same allegations as her RESPA claim. EMC also raised a number of arguments about its non-receipt of the September 6th Letter which are now moot in light of the Debtor's waiver of any claims relating to that letter at the June 26th hearing.

EMC also specifically refers the Court to Count I of the Amended Complaint in which the Debtor appears to rely solely upon the now waived September 6th Letter as the basis for her RESPA claim: "[EMC]failed to acknowledge receipt of the qualified written request *sent directly to it*, as required by Section 2605(e)(1)(A) . . ." Amended Complaint at

13

¶ 20 (emphasis added).  Because the Debtor did not base Count I of the Amended Complaint on the August 5th Letter and expressly withdrew her claims concerning the September 6th Letter, EMC contends that the Debtor should not be permitted to rely on the August 5th Letter now, for the first time, in her Objection to EMC's Motion for Summary Judgment.

With respect to the agency issues raised at the June 26th hearing, EMC contends that its disclaimer of agency regarding the August 5th Letter was appropriate under the plain wording of § 2605(e) because attorneys are not proper recipients of QWRs under RESPA. It relies, primarily, on Payne v Mortgage Elec. Registration Sys., Inc. (In re Payne), 387 B.R. 614, 635 (Bankr. D. Kan. 2008)("RESPA does not designate lender's counsel as an authorized recipient of a qualified written request."), and Griffin v. Citifinancial Mortgage Co., Inc., No. 3:05CV1502, 2006 WL 266106, *2 (M.D. Pa. Feb.1, 2006)("RESPA includes no . . . provision allowing borrowers requesting information from their servicer to send their qualified written request to the servicer's attorney.").  Additionally, EMC argues that even though A&C acted as its bankruptcy counsel in this matter, the scope of its representation did not extend to receiving QWRs.  Lastly, EMC asserts that even if A&C had forwarded the August 5th Letter to it, EMC's duty to respond under RESPA would still not have been triggered because 12 U.S.C. § 2605(e) requires direct notice of a QWR on the servicer.

B. The Debtor

The Debtor argues that her delivery of the August 5th Letter to EMC's counsel, which had filed a notice of appearance in this bankruptcy case, was sufficient to trigger liability

14

under RESPA. The Debtor contends that due to EMC's failure to respond to the QWR, she has still not been able to verify the accuracy of the payoff statement issued by EMC prior to the Closing insofar as it referred to principal and interest.[7] The Debtor claims entitlement to attorneys' fees and actual damages, including interest, fees and costs accrued between August 25, 2006, a date 20 days after the mailing of the August 5th Letter, and January 10, 2007, the date the Debtor received a payoff from EMC. Although she concedes that "she cannot quantify [her] damages in the present context," she insists that it is "patently obvious that such damages do exist." She also seeks entitlement to statutory damages under RESPA for EMC's "pattern and practice" of violations which, she argues, should "be a subjective determination focusing as much on the attitude of the servicer as the number of violations." The Debtor relies upon two reported cases involving EMC, Curtis v. LaSalle Nat'l Bank (In re Curtis), 322 B.R. 470 (Bankr. D. Mass. 2005), a case which does not involve the RESPA provisions at issue here, and Wanger v. EMC Mortgage Corp., 103 Cal. App. 4th 1125, 127 Cal. Rptr. 2d 685 (2002), as well as a bankruptcy case pending in the District of Massachusetts, all of which involve alleged improper conduct by EMC. The Debtor maintains that these cases, when combined with the present case, are sufficient for the Court to conclude that a triable issue of fact exists as to pattern and practice. Lastly,

---

[7] This statement is confounding in view of the Debtor's opportunity to conduct fact discovery during the nearly two years since she commenced this adversary proceeding.

the Debtor asserted, in her brief,[8] that she suffered emotional distress based upon worry and concern about whether EMC would foreclose before she could refinance the Property.

In the Amended Complaint, the Debtor appears to base her Ch. 93A on EMC's failure to timely respond to the August 5th Letter as a Ch. 93A demand letter. She also relies upon 209 Mass. Code Regs. § 18.21(4), which provides that a third party loan servicer may not use unconscionable means in servicing a loan, including failing to provide loan payoff information within five business days of a receipt of a written request.[9]

## V. DISCUSSION

### A. Summary Judgment Standard

A party is entitled to summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c), made applicable to this proceeding by Fed. R. Bankr. P. 7056. As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver "an absence of evidence to support the nonmoving party's case." Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 n.1 (1st Cir. 1994)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986)). "The burden of production then shifts

---

[8] The Debtor did not allege a separate cause of action for intentional or negligent infliction of emotional distress in her Amended Complaint. As such, the Court will only consider this as a component of damages based upon her RESPA claim.

[9] The purpose of 209 Mass. Code Regs. § 18.00 is, *inter alia*, to establish standards, by defining unfair or deceptive acts or practices, for the collection of debts from persons within Massachusetts by third party loan servicers. 209 Mass. Code Regs. § 18.01.

to the nonmovant, who, to avoid summary judgment, must establish the existence of at least one question of fact that is both 'genuine' and 'material.'" Desmond v. Varrasso, 37 F.3d at 763 n. 1. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Additionally, Rule 56(e)(2) provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

B. The RESPA Claim

It is appropriate to note at the outset that the Debtor has done very little in the nearly two years since she commenced this adversary proceeding to further her stated objective of determining the fees and charges assessed by EMC against her. Not only did her counsel fail to attend the Closing, the Debtor did not object to the EMC Claim, did not file a verified complaint despite two opportunities to do so, did not advance her own discovery, did not file her own motion for summary judgment, having missed the deadline to do so, and did not file any counter-affidavits in opposition to EMC's Motion for Summary Judgment. While the constraints of Rule 56(e) would ordinarily compel a finding for EMC, which did support its motion with affidavits, interrogatory responses and deposition transcripts, the Court shall nonetheless consider the Debtor's Objection for the sole purpose of determining whether EMC is entitled to judgment as a matter of law as the

17

relevant facts are uncontested.  Because there is some ambiguity in Count I of the Amended Complaint due to the absence of any defined terms,[10] the Court will construe Count I as if it were expressly based upon the August 5th Letter.

The Court also notes that neither party managed this rather simple matter with the due care required.  Sound practice, at the very least, dictates that A&C should have forwarded the August 5th Letter to EMC.  Had it done so, most, if not all, of the litigation that has occurred since the Court's August 2, 2007 order could have been avoided.  A&C partially mitigated its lapse when it instructed Debtor's counsel to send any QWRs directly to the servicer, and Debtor's counsel consented to A&C's directive when he sent the September 6th Letter directly to EMC.

The Debtor, having abandoned any right to rely on the September 6th Letter, relies upon A&C's receipt of the August 5th Letter, its failure to forward it to its client and upon a broad interpretation of 12 U.S.C. § 2605(e) to support her RESPA claim against EMC. EMC relies upon a literal reading of § 2605(e) which does not expressly permit a servicer's agent to receive service of a QWR.

Issues abound concerning whether § 2605(e) authorizes servicers' counsel to receive QWRs where, as here, the servicer did not establish a specific address to receive qualified written requests under 24 C.F.R. § 3500.21(e)(1) and where the servicer did not specifically authorize its counsel to receive QWRs. These issues multiply and mutate in the context of

---

[10] As the Court has previously noted, "sloppy pleading [has] permeate[d] this Chapter 13 case. . ." Holland, 374 B.R. at 427 n 30.

18

a bankruptcy proceeding where, as here, counsel to the servicer requested that all notices and pleadings be sent to it and filed pleadings related to the subject matter discussed in the QWR. Resolution of these issues, however, is unnecessary because the undisputed facts establish that Debtor's counsel not only failed to object to A&C's rejection of service of the August 5th Letter but also agreed with A&C to deal directly with EMC, as evidenced by the September 6th Letter. In the face of such an agreement, the Court finds that the Debtor waived any right to base her RESPA claim on the August 5th Letter. Accordingly, the Court finds that no RESPA violation occurred.

C. Damages

Even if the Debtor had established a valid RESPA claim against EMC, she failed to establish causation or damages arising from EMC's lack of a response to her QWR. A borrower may recover "any actual damages to the borrower as a result of the failure [to respond]," and "any additional damages, . . . in the case of a pattern or practice of noncompliance . . . not to exceed $1,000 . . . ." 12 U.S.C. § 2605(f)(1)(A) and (B). EMC relies on Nosek v. Ameriquest Mortgage Co. (In re Nosek)("Nosek I"), No. 04-4517, 2006 WL 1867096 (Bankr. D. Mass. June 30, 2006), *appeal allowed and remanded*, Ameriquest Mortgage Co. v. Nosek ("Nosek II"), 354 B.R. 331 (D. Mass. 2006).[11] "It is the Plaintiff's burden to show actual damages. 'The Plaintiff must establish that the economic injury was

_____

[11] On remand, the Bankruptcy Court revised its prior damages award, invoking its statutory contempt powers to award the debtor $250,000 for her emotional distress and $500,000 in punitive damages. Nosek v. Ameriquest Mortgage Co. (In re Nosek), 363 B.R. 643 (Bankr. D. Mass. 2007), *vacated by* _ F.3d _ , 2008 WL 4445707 (1st Cir. Oct. 3, 2008). This reversal does not affect the arguments or result in the present case.

proximately caused by the bank's violation of the Real Estate Settlement Procedures Act.'"

Nosek I, 2006 WL 1867096 at *6 (quoting In re Tomasevic, 273 B.R. 682, 687 (Bankr. M.D.

Fla. 2002)). In Nosek I, the court allowed, in part, a plaintiff's motion for summary

judgment and ruled that her mortgagee had violated § 2605(e) of RESPA which constituted

a *per se* violation of Ch. 93A under 940 Mass Code Regs. § 3.16(4). Id. at *8. The court

awarded only nominal damages to the plaintiff based upon RESPA and Ch. 93A, however,

because she failed to establish how she was damaged by the defendant's failure to respond.

Although she suggested through testimony that she was unable to refinance her mortgage

due to the defendant's failure to respond, she did not provide a basis to award actual

damages. The court ruled:

> On the current record any award of damages based in the Plaintiff's inability
> to refinance her loan on more favorable terms would be mere speculation as
> would any assumptions about any out-of-pocket costs the Plaintiff incurred.
> The Court cannot base an award upon mere speculation.

Nosek I, 2006 WL 1867096 at *6. Due to the plaintiff's failure to meet her burden as to actual

damages, the Nosek I court awarded her $1.00 for the defendant's violation of § 2605(e) and

$25.00 on the Ch. 93A claim. Id. at *7-8.[12]

---

[12] The Nosek I court also awarded the plaintiff $250,000 in damages for emotional
distress suffered as a result of the defendant's breach of the implied covenant of good
faith and fair dealing, 2006 WL 1867096 at *16, a count not pled by the Debtor in this
case in either complaint. *See* Holland, 374 B.R. at 444. In Nosek II, 354 B.R. 331 (D. Mass.
2006), the District Court ruled that "the Bankruptcy Code preempts both the state claim
under the implied covenant of good faith and fair dealing and the claim under section
2605(e) of [RESPA]" and remanded the Ch. 93A claim to the Bankruptcy Court "for
reconsideration as to whether the Bankruptcy Code preempts such state claims. . . ." Id.
at 340. This Court addressed the preemption issue raised by Nosek II in Holland. "[T]o
the extent that Nosek[II] holds that [a Chapter 13 debtor's claims under RESPA and

The Court finds that the Debtor has not met her burden of establishing actual damages under 12 U.S.C. § 2605(f)(1)(A). She alleged in the Amended Complaint that she was assessed additional interest and other charges by reason of EMC's failure to respond to the QWR. She did not quantify those amounts, however. The Court noted the same infirmity in the Debtor's Original Complaint wherein "she did not so much as intimate the extent of her actual damages, if any." Holland, 374 B.R. at 443. Despite this deficiency, the Court afforded the Debtor the opportunity to further amend her complaint, engage in discovery and file her own motion for summary judgment with supporting affidavits or other evidence to substantiate her claims for actual damages. The Debtor did not avail herself of this second chance. Her Amended Complaint contains no information concerning the amount of damages she has allegedly suffered, and she has not produced a scintilla of evidence to support her claim for actual damages, attorneys' fees or damages for emotional distress. Additionally, the Debtor's own deposition testimony supports EMC's contention that she suffered no actual damages. To demonstrate the existence of triable facts to overcome summary judgment, she must do more than "rely merely on allegations or denials in [her] own pleading[s]." She was required "by affidavits or . . . otherwise–[to] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

The Debtor also failed to establish any causal link between EMC's failure to respond

---

other federal consumer protection statues] are preempted by the Bankruptcy Code, this Court respectfully disagrees with the holding in that decision . . . ." Holland, 374 B.R. at 443.

to the QWR and any harm.  Instead, she offered only an unsupported allegation in the

Amended Complaint that she was unreasonably delayed in completing her refinancing.

This allegation is not supported by any evidence whatsoever or by the record of

proceedings in this case.  It is, in fact, belied by the Debtor's own conduct, admissions and

the pleadings on file.  The initial delay in effecting the Refinancing was due to the title

defect affecting the Property arising from an undischarged mortgage, a fact explicitly

conceded by the Debtor in her Motion to Refinance.  The Court issued a recordable

judgment discharging that mortgage on October 10, 2006.  The Debtor waited nearly two

months to file the Motion to Refinance on December 5, 2006.  The alleged failure of EMC

to respond to a QWR sent on August 5, 2006, two months prior to the resolution of the title

defect, did not delay the Debtor's filing of the Refinancing Motion.  Indeed, the Debtor filed

the Motion to Refinance without a payoff amount from EMC, and she could have easily

listed the disputed payoff amount from the EMC Claim if she wanted to address the issue

in her Motion.  Even if EMC had responded within 20 days of the August 5th letter,[13] the

Debtor could not have proceeded with the Refinancing until after the Court entered

judgment in the Resource One Adversary Proceeding. The Debtor's decision to wait until

December 5, 2006 to file the Motion to Refinance is not convincingly explained.  EMC

---

[13] The Court notes that § 2605(e)(1)(A) only requires that a servicer provide a
written response acknowledging receipt of a QWR within 20 days.  Section 2605(e)(2)
gives the servicer 60 days from receipt to make appropriate corrections in the account of
the borrower, conduct an investigation, take appropriate action with respect to the
account, and provide a written explanation to the borrower in accordance with the
statutory provisions.  *See* 12 U.S.C. § 2605(e)(2).

provided a payoff amount to the Debtor on the date of the hearing on the Motion to

Refinance, and the Debtor closed the transaction on February 6, 2007, within five days of

the original estimated date of closing contained in the Motion.

To the extent that the Debtor predicates her delay argument on her inability to

obtain a fixed amount for EMC's attorneys' fees and costs as she requested in the August

5th Letter, the Debtor could have mitigated that issue by filing an objection to the EMC

Claim, which she never did.  Moreover, she could have avoided her present uncertainty

about the accuracy of the payoff statement received from EMC by insisting that her

attorney attend the Closing to assure that EMC was paid only the undisputed portion of

the payoff.[14]  See Holland, 374 B.R. at 428.  As in Nosek I, the Debtor has provided no

evidence to substantiate her claim that she was damaged by EMC's failure to respond to

the QWR, and she submitted no evidence to rebut EMC's contention that she did not suffer

any actual damages as she is required to do under Fed. R. Civ. P. 56(e).

The Debtor has likewise failed to establish statutory damages.  To recover statutory

damages pursuant to 12 U.S.C. § 2605(f)(1)(B), the Debtor must demonstrate a "a pattern

or practice" of EMC's non-compliance with RESPA violations.  See generally Maxwell v.

Fairbanks Capital Corp. (In re Maxwell), 281 B.R. 101, 123 (Bankr. D. Mass. 2002).  The term

suggests a standard or routine way of operating. Id. (citing Newton v. United Cos. Fin.

---

[14] The Debtor's ability to object to the fees and costs assessed by EMC was
preserved by the Court's January 12, 2007 order requiring the parties to escrow $25,000
of the Refinancing proceeds pending resolution of the fee issue.  As discussed above,
Debtor's counsel did not attend the Closing and failed to established the required
escrow account.

Corp., 24 F. Supp.2d 444, 456 (E.D. Pa. 1998)(term as used in [the Truth in Lending Act]

refers to "wide-ranging and institutionalized practices."); First Nat'l Bank v. Office of

Comp'r of Currency, 956 F.2d 1456, 1461-62 (8th Cir.1992) (failure to make interest rate

disclosure required by [the Truth in lending Act] to 691 borrowers over two years

constitutes pattern or practice). In Maxwell, the Court found the lender's failure to respond

to two QWRs insufficient to establish a "pattern or practice" under RESPA. Maxwell, 281

B.R. at 123. Here, the Debtor has offered no documents or testimony to establish that EMC

had a standard or institutionalized practice of RESPA violations at the time she filed her

Amended Complaint. The cases cited by the Debtor do not constitute evidence and, even

if the Debtor had established a RESPA violation in this case, one violation, without more,

is insufficient to establish a "pattern or practice" entitling the Debtor to statutory damages

under § 2605(f)(1)(B). Id.

For the reasons stated above, EMC is entitled to summary judgment with respect

to Count I of the Amended Complaint.

D. Chapter 93A

Chapter 93A provides that a plaintiff cannot file suit under that statute until 30 days

have elapsed after a demand letter of the type set forth in § 9(3) has been sent. Section 9(3)

provides, in part:

> At least thirty days prior to the filing of any such action, a written demand
> for relief, identifying the claimant and reasonably describing the unfair or
> deceptive act or practice relied upon and the injury suffered, shall be mailed
> or delivered to any prospective respondent. Any person receiving such a
> demand for relief who, within thirty days of the mailing or delivery of the
> demand for relief, makes a written tender of settlement which is rejected by

24

the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner. In all other cases, *if the court finds for the petitioner*, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two . . .

Mass. Gen. Laws ch. 93A, § 9(3)(emphasis added).

Assuming, *arguendo*, that the August 5th Letter was an adequate demand letter under Chapter 93A, *see generally* <u>Cassano v. Gogos</u>, 20 Mass. App. Ct. 348, 350, 480 N.E.2nd 649 (1985), the Debtor would also have to: (1) prevail on the 93A claim at trial; and (2) prove that EMC's failure to make any settlement offer "was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two [of Ch. 93A]" to establish a claim for multiple damages under § 9(3). *See generally* Michael C. Gilleran, *Law of Chapter 93A*,   52 Mass. Prac. § 11.10 at 2 (footnotes omitted); *see also* <u>Leet v. Cellco P'ship</u>, 06-40096-FDS, 2007 WL 3332803, *2 (D. Mass. Oct. 19, 2007)("Because the Court has concluded that there is no violation of Chapter 93A, defendant's allegedly inadequate response to plaintiff's demand letters is irrelevant."). The Debtor cannot prevail on her Ch. 93A claim at trial because the claim is solely predicated on the RESPA violation which the Court has rejected.   In the absence of an independent basis for a Ch. 93A violation, there can be no award for multiple damages under Ch. 93A, § 9(3) for EMC's failure to respond to the August 5th Letter.   To the extent that the Debtor bases her  Ch.

93A claim on EMC's violation of 209 Mass. Code Regs. § 18.21(4), the result is the same for all of the reasons discussed above. EMC is entitled to summary judgment with respect to Count II of the Amended Complaint.

## VI. CONCLUSION

Upon consideration of the foregoing, the Court shall enter an order granting EMC's Motion for Summary Judgment and overruling the Debtor's Objection.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: October 30, 2008

26